## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JESSIE JAMES DALTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-05-1182-HE** |
| | ) | |
| **MIKE MULLIN, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing through counsel, brings this action pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition [Doc. No. 15] and the state court trial transcripts ("Tr.").[1] Petitioner did not file a reply within the time limits prescribed by this Court, and the matter is at issue. For the reasons set forth below, it is recommended that the petition be denied.

Petitioner is challenging his conviction of murder in the first degree, for which he was sentenced to life imprisonment without the possibility of parole. District Court of Oklahoma County, Case No. CF-2002-1774. Following his conviction, Petitioner filed a direct appeal, and the OCCA affirmed Petitioner's conviction and sentence. Response,

---

[1] The state court record includes three volumes of jury trial proceedings which are designated by the date of the trial proceedings without volume numbers. For ease of reference, the undersigned will refer to the "Transcript of Jury Trial Proceedings had on the 28th Day of January, 2003" as Tr.Vol.1; the "Transcript of Jury Trial Proceedings had on the 29th Day of January, 2003" will be referred to as Tr.Vol.2; and the "Transcript of Jury Trial Proceedings had on the 30th Day of January, 2003" will be referred to as Tr.Vol.3.

Ex. C.  Petitioner states that he has filed no applications for post-conviction relief. Petition at 3.

In his federal habeas petition, Petitioner now raises verbatim the seven grounds for relief that he asserted in his direct appeal:

1. [Petitioner] was denied his fundamental right to a fair trial and to cross-examine witnesses when the trial court prohibited the defense from using relevant and admissible impeachment evidence against the State's key witnesses.

2. The State's use of the cooperation agreement resulted in impermissible vouching for the veracity of the co-defendants and violated [Petitioner's] fundamental due process rights under the state and federal constitutions.

3. [Petitioner] received ineffective assistance of counsel by trial counsel's failure to properly challenge the eyewitness identification testimony by Stella Mae Ray and Darnell Ray depriving [Petitioner] of a fair trial.

4. The State violated the spirit of *Allen v. State* and the mandate of the Oklahoma Criminal Discovery Code by failing to disclose Darnell Ray's prior convictions until the morning of the first day of trial.

5. The trial court committed reversible error by prohibiting the defense from cross-examining co-defendant Warren Plank with a letter that he had written indicating he did not know who shot Billy Ray.

6. The trial court erred by excluding evidence that had a legitimate tendency to create a reasonable doubt as to the identity of the perpetrators of the crime in violation of [Petitioner's] fundamental rights to present a defense and confront the witnesses against him.

7. Trial errors, when considered in a cumulative fashion, warrant a new trial or a modification of [Petitioner's] sentence.

Petition at 5-6.

Respondent admits that Petitioner has exhausted his state court remedies and that the petition is timely.  Respondent contends that the OCCA's decision as to Petitioner's Sixth Amendment right to confrontation claims in Grounds One and Six and his

ineffective assistance of counsel claim in Ground Three is not contrary to or an unreasonable application of Supreme Court law.  Respondent contends that the claims raised in Grounds Two, Four and Five raise matters of state law and that Petitioner is not entitled to habeas relief on these claims because he fails to show that the alleged errors rendered his trial fundamentally unfair.  Respondent also contends that Petitioner's claim of cumulative error in Ground Seven is without merit.

**Factual Background**

The relevant facts underlying Petitioner's conviction were summarized in the OCCA's opinion affirming Petitioner's conviction and sentence as follows:

> The case arises out of a home invasion in which [Petitioner] allegedly participated with Paul Duran, Jr. and Warren Plank.  During the commission of the crime, Billy Wayne Ray, the nineteen-year-old son of Darnell and Stella Ray, was murdered.  Plank and Duran testified at trial against [Petitioner], claiming [Petitioner] was the only one who carried a pistol that night (they had other types of guns) and was the one who shot the victim.
>
> On the night in question at approximately 8 p.m., Darnell Ray was in his bedroom, when he heard the doorbell ring.  He arose to answer it, but saw a man, whom he identified as [Petitioner], standing outside the storm door leading to his bedroom with a pistol in hand.  The man told Mr. Ray to open the door or "I will kill you."  Mr. Ray ducked out of the way in an attempt to retrieve a gun to defend himself, but the man yanked the door open and entered with two younger men.
>
> Stella Ray heard the commotion.  Upon entering the bedroom, she saw three men forcing their way into her home with guns and demanding money.  One ordered Mrs. Ray to get on her bed with her husband or be killed.
>
> The men became aware that the Rays' son Billy was also in the home.  One said, "We are in trouble.  There are three of them."  One of the males left the room to find Billy.  A shot soon rang out, and Mrs. Ray went running to the next room, where she found Billy struggling with one of the males over possession of a rifle.  Billy claimed the men were shooting blanks, because the man had fired his gun right at Billy.
>
> At this point, the man identified as [Petitioner] entered the room with his pistol and fired a shot into a metal cabinet.  He then said, "I will

show you blanks, boy," and fired the pistol into Billy's head, mortally wounding him. (Billy Ray was also hit with two other non-fatal shots to his body.)

The men fled, discharging a shotgun into the wall as they left. Mrs. Ray called 911. Meanwhile, as she was looking outside, Mrs. Ray saw a dark car with shiny rims and a fin tail pass by. Another witness standing across the street identified the car as a red or maroon Ford Mustang with shiny wheels. [Petitioner] admitted driving such a car that night.

Response, Ex. C at 1-3.

## Discussion

## Standard Governing Petitions For Habeas Corpus

The undersigned initially notes that in setting forth his habeas claims and supporting arguments, Petitioner has essentially copied his direct appeal brief, primarily relying on state law to support his arguments for federal habeas relief. *Compare* Petitioner's Brief in Support of Habeas Corpus Relief (Petitioner's Brief) [Doc. No. 12] and Response, Ex. A (Petitioner's Original Brief, Case No. F-2003-165). However, alleged state law errors do not ordinarily warrant federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). To the extent Petitioner has raised violations of federal law which were presented to the OCCA on direct appeal and were adjudicated on the merits, his claims are governed by the provisions of 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). Section § 2254(d) establishes a standard of habeas review known as AEDPA deference. *See e.g., Brown v. Uphoff*, 381 F.3d 1219, 1223 (10th Cir. 2004). Under this standard, habeas relief may not be granted on a claim adjudicated on the merits in state court proceedings unless the state court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding.  28 U.S.C. § 2254(d)(1) and (2).  A state court's decision is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  The "state court decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions."  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (*per curiam*).  "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'"  *Id.* (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner."  *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. at 405.  With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court case] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly.  *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (*per curiam* ).  When a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference.  *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [that court] had before it." *Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).  Further, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings.  *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

## I. __Ground One - Restriction of Cross-examination of Darnell Ray__

In his first ground for relief, Petitioner alleges that he was denied a fair trial and his Sixth Amendment right to confront the witnesses against him because the trial court prohibited the use of certain impeachment evidence during questioning of Darnell Ray, one of the victims of the home invasion and the father of Billy Ray, the murder victim. Petition at 6-7.  Specifically, Petitioner alleges, as he did on direct appeal, that his trial was rendered unfair by the trial court's ruling that Mr. Ray could not be impeached with evidence of his prior convictions.  Petitioner's Brief at 12-15.  He also alleges that his constitutional rights were violated by the trial court's ruling which prohibited the impeachment of Mr. Ray with evidence of his alleged bootlegging activity.  Petitioner's Brief at 15-17.

The record shows that on the morning of trial but before Mr. Ray testified, the State provided defense counsel an NCIC report showing that Mr. Ray had a criminal history with prior convictions that included a 1970 armed robbery conviction.  Tr.Vol.I, 151.  Through a motion in limine the State moved to suppress the use of Mr. Ray's prior convictions for impeachment purposes on the basis that his convictions were over ten

6

years old, and thus the use of the "stale" convictions was prohibited under Okla. Stat. tit. 12, § 2609(B).[2]   After a bench conference in which defense counsel argued that he should be able to impeach Mr. Ray's credibility with the armed robbery conviction, the trial court found that the conviction was stale and sustained the motion in limine.  *Id.*, 152-161.

As on direct appeal, Petitioner alleges in this habeas action that Mr. Ray's armed robbery conviction was not stale and should have been admitted for impeachment purposes under Oklahoma law.  He argues further that even if the conviction was too old, the evidence regarding the prior conviction should have been admitted under a statutory exception allowing impeachment evidence of a stale conviction where the probative value of such evidence outweighs its prejudicial effect.  Petitioner's Brief at 12-14 (citing Okla. Stat. tit. 12, § 2609(B)); *see also* Response, Ex. A at 12-14.  In that regard, Petitioner specifically contends that the statutory exception should have applied because Mr. Ray's credibility was central to the evidence against Petitioner.  Petitioner's Brief at 12.

In a related claim, Petitioner argues, as he did on direct appeal, that he should have been allowed to impeach Mr. Ray with evidence of his bootlegging activity. Petitioner claims that such evidence was admissible pursuant to Okla. Stat. tit. 12, § 2608(B), as evidence of Mr. Ray's bias or motivation to fabricate.  Petitioner's Brief at 15-

---

[2]Section 2609 provides in relevant part:
Evidence of a conviction under this section is not admissible if a period of more than ten (10) years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later, to the date of the witness's testimony, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.
Okla. Stat. tit. 12, § 2609(B).

17. The record shows that in a pretrial motion hearing, the State sought to suppress as irrelevant any evidence tending to portray the Rays in a derogatory manner; defense counsel argued that the fact that the Rays were bootleggers, *i.e.,* sold liquor from their home, was relevant to showing that other individuals were aware that the Rays had money in their home and that "someone else" robbed them.   Transcript of Pretrial Hearings, 75-76.   The trial court found that the defense had failed to show a nexus to another suspect, and therefore the evidence was not relevant and would not be admitted at trial. *Id.*, 76.

In considering Petitioner's claim regarding the admissibility of Mr. Ray's prior convictions, the OCCA agreed with the trial court's ruling under § 2609(B) that Mr. Ray's convictions were too old to be used for impeachment purposes.   Response, Ex. C at 5.[3] The OCCA also found no abuse of discretion in the trial court's application of state law in refusing to allow the use of Mr. Ray's stale prior convictions under certain exceptions in the state evidentiary code. *Id.* at 6.

With respect to admissibility of evidence of Mr. Ray's illegal bootlegging activity, the OCCA found that the trial court's refusal to admit this evidence was not an abuse of discretion.   The Court noted that as Mr. Ray was one of the victims in the case and his own son was killed, "his 'bias' was obvious from the losses he suffered, apart from any possible bias he might have hypothetically had for attempting to cover-up his bootlegging

---

[3]The OCCA found that the NCIC report indicated that Mr. Ray was "likely paroled" in 1974 on his prior convictions, including the armed robbery conviction.   Response, Ex. C at 5.   Based on Mr. Ray's apparent release from incarceration in 1974, the OCCA concluded that under a plain reading of the statutory language, § 2609(B), the trial court correctly ruled that Petitioner's armed robbery conviction stale. *Id.*

activities." *Id.*  The Court reasoned further that "the crime of bootlegging is not *per se* probative of 'truthfulness' under section 2608." *Id.*

To the extent Petitioner challenges the OCCA's interpretation and application of state evidentiary rules, such claim raises a matter of state law not cognizable on federal habeas corpus review.  *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991) (stating that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").  Petitioner is entitled to habeas relief only if the state court violated the federal constitution when it excluded evidence.

Petitioner alleges as on direct appeal that the trial court's ruling also violated his Sixth Amendment right to confrontation.  However, Petitioner contends that the OCCA limited its analysis to whether the trial court abused its discretion in excluding the evidence and failed to address his federal and constitutional claim, thus requiring this Court to "use its own judgment" on such claim in Ground One.  Petitioner's Brief at 18. The undersigned agrees that rather than address the merits of this federal claim, the OCCA appears to have considered only the trial court's discretion in excluding evidence pursuant to the Oklahoma Evidence Code.  Therefore, the undersigned finds that Petitioner should be "afford[ed] the benefit of the doubt" and his confrontation claim should be reviewed de novo. *Malicoat v. Mullin*, 426 F.3d 1241, 1246 (10th Cir. 2005).

Supreme Court precedent makes it clear that "the rights to confront and cross-examine witnesses and to call witnesses in one's own behalf [are] essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  The Sixth Amendment

right to confrontation includes the right to cross- examination. *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974)). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* at 316-17. Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (internal quotation omitted). In order to demonstrate a constitutional violation, Petitioner must show "that the evidence, if admitted, would have created reasonable doubt that did not exist without the evidence." *Patton v. Mullin*, 425 F.3d 788, 797 (10th Cir. 2005) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982)).

Here, Petitioner fails to show a constitutional violation. First, in its holding that Mr. Ray's armed robbery conviction was stale and thus prohibited for impeachment purposes under the state evidentiary statute, the OCCA interpreted state law, which is binding on this Court. *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) ("On habeas review, however, the [state] courts' interpretation of the state . . . statute is a matter of state law binding on this court."). Although Petitioner asserts that the limitation placed on Mr. Ray's testimony hindered the jury's ability to judge his credibility, Petitioner fails to demonstrate that the excluded evidence concerning Mr.

Ray's prior conviction and/or bootlegging activity, if admitted, would have created reasonable doubt that Petitioner committed the crime.  Although Mr. Ray offered relevant testimony against Petitioner, specifically, that Petitioner, the older of three males, led the home invasion and that Petitioner was carrying a small pistol, Tr.Vol.2, 7-10, substantial evidence against Petitioner was offered by witnesses other than Mr. Ray.  Stella Ray, not Mr. Ray, identified Petitioner as the person who shot her son.   Tr.Vol.1, 108-128.  Additionally, co-defendants Paul Duran and Warren Plank testified that they were with Petitioner in his red Ford Mustang on the night of the home invasion, that they invaded the Rays' home and that Petitioner, who was the only one with a pistol, was the one who shot Billy Ray.  Tr.Vol.2, 44-53, 55-56, 64; *see also* Tr.Vol.2, 106-07, 112-117.[4]

On this record, the undersigned finds that Petitioner fails to establish that any of the excluded evidence would have "created reasonable doubt that did not exist without the evidence."  *Patton*, 425 F.3d at 798.  Therefore, the undersigned finds that Petitioner has failed to demonstrate that his constitutional right to confrontation was violated, and he is not entitled to habeas relief in Ground One.

## II.  Ground Two - Prosecutorial Misconduct

In Ground Two, Petitioner alleges that the prosecutor improperly bolstered the credibility of two witnesses.  At trial, in addition to Stella and Darnell Ray's testimony, the State presented testimony by Petitioner's co-defendants, Paul Duran and Warren Plank.  As on direct appeal, Petitioner alleges that the prosecutor repeatedly questioned the co-defendants about the their respective cooperation agreements with the State,

---

[4]Moreover, as noted by the OCCA, the jury did hear, through the testimony of co-defendant Warren Plank, that he, Duran and Petitioner had gone to Mr. Ray's home to purchase liquor.  Tr.Vol.2, 112-13, 144.

which resulted in impermissible vouching for their veracity and violated his fundamental due process rights under the state and federal constitutions.  Petitioner's Brief at 18-19.

The OCCA noted that defense counsel did not object on the same basis at trial and found no plain error in the prosecutor's questioning of the two co-defendants.  Response, Ex. 3 at 8 (citing *Simpson v. State*, 876 P.2d 690, 693 (Okla. Crim. App. 1994)).[5]  The Court based its conclusion on the fact that "the prosecutor did not indicate a personal belief in the witness' credibility and also because defense counsel had the opportunity (and did in fact) to cross-examine the co-defendants and impeach their testimony by using the cooperation agreements."  Response, Ex. C at 8 (citing *Freeman v. State*, 876 P.2d 283, 288 (Okla. Crim. App. 1994)).[6]

Petitioner's allegations of prosecutorial misconduct which do not implicate a specific constitutional right are reviewed only for a violation of due process.  *See Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005) (citing *Darden v. Wainwright*, 477 U.S. 168

---

[5]The Tenth Circuit has held the OCCA's determination that the admission of certain evidence does not amount to plain error is entitled to deference under 28 U.S.C. § 2254(d) on habeas review of a claim of fundamental unfairness, as there was "no practical distinction between the formulations of plain error [under Oklahoma law] and the federal due-process test, which requires reversal when error 'so infused the trial with unfairness as to deny due process of law.'"  *Thornburg v. Mullin*, 422 F.3d 1113, 1125  (10th Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 75 (1991)).

[6]In *Freeman*, to determine if the State improperly vouched for the credibility of its witnesses the OCCA adopted the following test, as enunciated by the Tenth Circuit Court of Appeals in *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990):

> Argument . . . is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.

*Freeman*, 876 P.2d at 288.  *See also Nickell v. State*, 885 P.2d 670, 673 (Okla. Crim. App. 1994) ("Use of the 'truthfulness' portions of these [plea] agreements becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony.") (quoting *United States v. Bowie*, 892 F.2d at 1498); *see id.* ("There is no improper vouching if the testimony does 'no more than reveal that the witnesses had an obligation to testify truthfully and explain the consequences of a breach of that obligation.'").

(1986)). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Patton*, 425 F.3d at 811 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  To be entitled to habeas relief, a petitioner must establish that the prosecution's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Patton*, 425 F.3d at 811 (citing *Donnelly*, 416 U.S. at 643).  Such a determination may be made only after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's case." *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986).

The record demonstrates that the OCCA's decision was reasonable.  In response to the prosecutor's questions, both Duran and Plank testified as to their negotiated agreements with the State which provided for the disposition of certain pending criminal charges in related Oklahoma County cases in exchange for their truthful testimony in the case against Petitioner.  Tr.Vol.2, 35-40; Tr.Vol.2, 101-104.[7]  The record shows that the prosecutor asked  Duran about the truthfulness provision of the agreement several times, Tr.Vol.2, 38,39, and made similar inquiries of Plank at least twice. Tr.Vol.2, 103.  The prosecutor further elicited information from the two co-defendants that the trial judge in Petitioner's case would sentence Duran and Plank after Petitioner's trial and that their

---

[7]Specifically, co-defendant Paul Duran testified that he had entered into a "cooperation memorandum" wherein the State of Oklahoma amended the initial charge of first degree murder to first degree robbery and required that Duran testify truthfully at Petitioner's trial.  Tr.Vol.2, 35-40.   Duran testified that he had entered a plea of guilty to the amended charge and the State had agreed to recommend a sentence of 28 years of imprisonment. *Id.*  Similarly, co-defendant Warren Plank testified that he had entered a guilty plea to an amended charge of first degree robbery and that the State agreed to recommend a sentence of 20 years of imprisonment in exchange for his truthful testimony and his agreement to waive a youthful offender appeal.  Tr.Vol.2, 101-04.

failure to testify truthfully would render their respective agreements void.  Tr.Vol.2, 39; Tr.Vol.2, 103.

Here, the absence of a contemporaneous objection deprived the trial court of the ability to curtail any troubling portions of the prosecutor's questioning of Duran and Plank.  Additionally, although the prosecutor emphasized the truthfulness provisions of the plea negotiations, the testimony elicited by the prosecutor also introduced impeaching evidence.  By the prosecutor's inquiries, the jury was presented evidence that Duran and Plank had committed a crime and that they were testifying for the personal benefit of being charged with a lesser offense – giving the jury reason to question whether Duran and Plank were telling the truth.  Moreover, as noted by the OCCA, defense counsel challenged the specifics of both co-defendants' negotiated agreements and thoroughly cross-examined Duran and Plank as to the truthfulness of their testimony. Tr.Vol.2, 67-82; Tr.Vol.2, 137-149.  Finally, in light of the additional testimony given by Darnell Ray, who identified Petitioner as the first person to enter his home yielding a gun, and the testimony of Stella Ray, who identified Petitioner as the individual who shot her son during the home invasion (further discussed *infra* in connection with Ground Three), it is unlikely that the jury was unduly influenced by the prosecutor's remarks. Taking these factors into consideration, the undersigned finds that the prosecutor's inquiries as to the truthfulness provisions of the plea agreements did not so infect the trial with unfairness as to deny Petitioner due process.  Therefore, in rejecting this claim on direct appeal, the OCCA did not unreasonably apply clearly established federal law. Petitioner is not entitled to habeas relief on Ground Two.

## III.  <u>Ground Three - Ineffective Assistance of Counsel</u>

In Ground Three, Petitioner alleges that prior to trial, defense counsel "apparent[ly] recogni[zed] that the eyewitness identification evidence needed to be challenged," because he endorsed an unnamed eyewitness identification expert. Petitioner's Brief at 21.  However, Petitioner contends that counsel was ineffective for failing to challenge, either before or during trial, the eyewitness identification made by Darnell and Stella Ray based on a lack of reliability.  *Id.*  Petitioner argues that no photographic lineup was given to the Rays pursuant to proper identification procedures, that the Rays observed Petitioner on television after his arrest, and that the Rays' description of Petitioner at trial was insufficient.  *Id.* at 22.  Petitioner further argues that because the Rays misidentified the co-defendants in describing their roles during the home invasion and because Petitioner presented an alibi defense, his counsel's failure to attack the credibility of the eyewitness testimony constituted ineffective assistance.  *Id.* at 22-23.  Petitioner also alleges that counsel was ineffective in failing to present evidence "regarding the general lack of reliability of eyewitness identification so that the jury could properly assess the eyewitness testimony."  *Id.* at 21.

In reviewing this claim on direct appeal, the OCCA applied the clearly established principles of *Strickland v. Washington*, 466 U.S. 668 (1984), and held that "no constitutional ineffective assistance of counsel occurred," particularly "given the trial court's pre-trial statement regarding said identifications as 'unequivocal,' defense counsel's challenges to this testimony during trial and closing arguments, and the jury instruction requested by defense counsel (and given) concerning eyewitness testimony."

Response, Ex. C at 8-9.   As discussed below, the OCCA's determination is neither contrary to nor an unreasonable application of *Strickland*.

To demonstrate that counsel was ineffective, Petitioner must show both that counsel's performance "fell below an objective standard of reasonableness" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. Review of counsel's performance under the first prong of the *Strickland* test is highly deferential. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.   To be deficient, the performance must be "outside the wide range of professionally competent assistance." *Id.*   Counsel's decisions are presumed to represent "sound trial strategy"; "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotation marks omitted).  As for the prejudice prong, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.   If Petitioner is unable to show either "deficient performance" or "sufficient prejudice," the ineffectiveness claim will fail. *Strickland*, 466 U.S. at 700.

Under Oklahoma law, reliability of in-court identification is based upon the totality of the circumstances. *Nelson v. State*, 755 P. 2d 684 (Okla. Crim. App. 1988). Factors that should be considered in assessing the reliability of an in-court identification are: the witness' opportunity to see the defendant at the time of the crime, the degree of

16

attention paid by the witness, witness' prior accuracy in describing the defendant , the witness' certainty level in court, and the lapse of time between the crime and the confrontation. *Id.* at 687 (citing *Neil v. Biggers*, 409 U.S. 188 (1972)).

Contrary to Petitioner's claim that "nothing indicates that the Rays' in-court identifications were independent and reliable," Petitioner's Brief at 24,[8] the record shows otherwise. At preliminary hearing, Mr. Ray identified Petitioner and testified that he had clearly seen Petitioner's face as Petitioner was yelling and pulling on the outside storm door; that Petitioner, carrying an automatic pistol, was the first intruder to enter his home, followed by Warren Plank and a third man, one carrying a saw-off shotgun and another carrying a rifle; that when the first gunshot was fired and Stella Ray left the room, Petitioner, the "one with the handgun" also left the room and Ray then heard another gunshot. P.H.Tr., 15-25. Mr. Ray further testified that Petitioner and Plank had been at his home earlier the day of the homicide trying to buy some liquor from him. P.H.Tr., 25, 29, 39. Ray stated that he observed the men during the home invasion for approximately ten minutes. P.H.Tr., 40. Mr. Ray also stated that he had seen photographs of Petitioner, Duran and Plank on television, but that the pictures were not necessary to his identification of Petitioner. P.H.Tr., 33. At trial, Mr. Ray, consistent with his testimony at preliminary hearing, identified Petitioner as person yielding the pistol and pulling on his door demanding entry, adding that Petitioner was appeared to

---

[8]The undersigned notes that although Petitioner cites *Neil v. Biggers*, 409 U.S. 188 (1972), and *Manson v. Brathwaite*, 432 U.S. 98 (1977), he does not claim that counsel should have challenged suggestive or tainted pretrial identification procedures. *See* Petitioner's Brief at 21-22. In fact, the record shows that after the murder of his son, Darnell Ray was shown photographs of several suspects, not including Petitioner or co-defendants Duran and Plank, and Mr. Ray failed to identify anyone in those photos as the persons who invaded his home. Transcript of Preliminary Hearing Proceedings (P.H.Tr.), 32-33.

be older than the other two men, and that Petitioner had been at his home earlier in the evening.  Tr.Vol.2, 7-10, 21.  He further testified that he was able to get a good look at Petitioner as he threw Ray's briefcase on the bed and demanded money.  *Id.* at 15.[9]

Stella Ray's identification of Petitioner was also definitive.  At preliminary hearing, Mrs. Ray testified that on the evening of the homicide, she heard a noise and ran into her husband's bedroom where she saw a man pulling on the door trying to get into the house. P.H.Tr., 43-46.  She clearly identified Petitioner as the person at the door and the person who entered the house first, wielding a pistol, after which another man, whom she identified as Warren Plank, entered carrying a shotgun.  *Id.*  Mrs. Ray testified that she saw Petitioner pick up Mr. Ray's briefcase and heard him demand money and instruct Plank to watch them. Id., 47-48, 50.  Mrs. Ray testified that after she heard a gunshot, she ran to a bathroom area and saw a third man and her son Billy struggling with a long rifle. *Id.*, 52-55.  She testified that Petitioner, who had a diamond earring in his ear and carried a handgun, followed her, reached around her to fire a shot into a nearby metal cabinet, and then moved in front of her and fired three more shots at Billy.  *Id.*, 55-57.  Mrs. Ray's identification of Petitioner remained firm under cross-examination, and she added that Petitioner looked older than the other two men.  Id., 65.  At trial, Mrs. Ray's testimony regarding the identification and description of Petitioner was consistent with her preliminary hearing testimony.  Tr.Vol.1, 110-119.

---

[9]As asserted by Petitioner, at preliminary hearing Mr. Ray identified Warren Plank as the person Petitioner instructed to hold Ray at gunpoint, rather than Paul Duran, who testified he was the one who held a gun on Mr. Ray.  P.H.Tr., 36-41.  However, any discrepancies or misidentification of the two young men by Mr. Ray does not undermine his consistent testimony describing Petitioner, whom Ray had seen earlier in the day and whom he described as the older of the three.

Thus, the identification of Petitioner by the Rays was consistent and was based on their observations of him during the home invasion and shooting of Billy Ray. Additionally, defense counsel thoroughly cross-examined the Rays concerning their identification of Petitioner. Counsel also requested and received a cautionary instruction concerning eyewitness identification. Response, Ex. G.

On this record, the undersigned finds that Petitioner has failed to establish that counsel was ineffective for failing to challenge Stella and Darnell Ray's identification of Petitioner as the person who invaded their home and shot their son Billy Ray. Accordingly, the OCCA's rejection of Petitioner's ineffective assistance of counsel claim is not contrary to or an unreasonable application of *Strickland v. Washington*, *supra*. Petitioner is not entitled to habeas relief on Ground Three.

## IV.  <u>Ground Four - State's Discovery Violation/Admission of Evidence</u>

In Ground Four, Petitioner alleges that the State failed to comply with the Oklahoma Discovery Code and the mandates of *Allen v. District Court of Washington County*, 803 P.2d 1164 (Okla. Crim. App. 1990) (setting forth procedures for pre-trial discovery in a criminal case).   Specifically, Petitioner alleges that the State failed to provide defense counsel with information regarding Darnell Ray's prior convictions within the requisite ten day period prior to trial. Petitioner's Brief at 25.  Petitioner contends that the discovery sanction violated his fundamental right to a fair trial and to confront witnesses.  Petitioner's Brief at 27.

In reviewing this claim on direct appeal, the OCCA found that the State had violated the ten day disclosure requirements set forth in Okla. Stat. tit. 22, § 2002(A) and

(D), triggering the possible remedies of continuance, prohibiting use of the evidence, or such other relief deemed just under the circumstances.[10]  Response, Ex C at 9.   However, the OCCA held that the violation did not deprive Petitioner of due process, noting that "defense counsel desired to use the information [regarding Mr. Ray's prior convictions] and did not request a continuance," and further, "the trial judge took a recess so the parties could consider the issue, and no alternative relief was suggested." *Id.*  The OCCA therefore found that the trial judge did not abuse his discretion in granting the State's motion in limine to prohibit impeachment with Mr. Ray's prior convictions.  *Id.* at 10.

To the extent Petitioner bases his claim on the State's violation of the Oklahoma discovery code, he is alleging only a violation of state law which, as previously stated, is not cognizable in this habeas corpus action.  *Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991). To the extent Petitioner is also alleging that the delayed production of Mr. Ray's criminal history violated his due process rights, his claim fails.  According to Petitioner, if defense counsel had been given proper notice of Mr. Ray's prior convictions, he would have had more time to determine whether the convictions were in fact stale for impeachment purposes.  Petitioner's Brief at 25.  However, as previously discussed in

---

[10]Under Okla. Stat. tit. 22, § 2002(D), "[a]ll issues relating to discovery, except as otherwise provided, will be completed at least ten (10) days prior to trial. The court may specify the time, place and manner of making the discovery and may prescribe such terms and conditions as are just."  Oklahoma law further provides that:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.

Okla. Stat. tit. 22, § 2002(E)(2); *see e.g., Wilkerson v. Dist. Court of McIntosh County*, 839 P.2d 659, 661 (Okla. Crim. App. 1992).

connection with Ground One, the OCCA affirmed the trial court's determination that the evidence of Mr. Ray's prior convictions was inadmissible under state evidentiary law. Although Petitioner states that with more time he could have "establish[ed] to the trial court's satisfaction that the priors involving dishonesty were admissible," Petitioner's Brief at 26, Petitioner has failed, on direct appeal and before this Court, to support such claim with any further facts or evidence.  Moreover, as previously discussed, the strength of the evidence against Petitioner as testified by witnesses other than Mr. Ray supports the conclusion that evidence of Mr. Ray's prior conviction would not have created reasonable doubt as to Petitioner's guilt.

Under these circumstances, the undersigned finds that Petitioner has failed to show that he was prejudiced by the State's belated disclosure of Mr. Ray's previous convictions and cannot establish that the result of the proceedings would have been different.  *See, e.g., Benson v. Martin*, No. 99- 7117, 2001 WL 476573 (10th Cir. May 7, 2001)[11] (finding no constitutional error from state court's violation of discovery requirements of *Allen* where petitioner failed to "show prejudice sufficient to rise to the level of fundamental unfairness from the lack of pre-trial discovery concerning tire track evidence").   Accordingly, Petitioner has failed to show that the OCCA's decision was contrary to or an unreasonable application of federal law, and he is therefore not entitled to habeas relief on Ground Four.

**V.  Ground Five - Defense Discovery Violation/Exclusion of Evidence**

---

[11]Unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

In Ground Five Petitioner alleges that he was deprived of a fair trial when the trial court prohibited defense counsel from cross-examining co-defendant Warren Plank regarding a letter he allegedly wrote stating he did not actually know who shot Billy Ray. Petition at 13-14. Petitioner's co-defendant Warren Plank, who was seventeen at the time of trial, testified at trial that he was with Petitioner on the night in question, that they drove to the Rays' home in Petitioner's red Ford Mustang, that he participated with Petitioner in the home invasion, and that Petitioner had carried the handgun. Tr.Vol.2, 101-112. During cross-examination, Plank testified that as he was struggling with Billy Ray in the bathroom area of the Rays' home, the gunshots that hit Billy came from behind him. Tr.Vol.2, 147. When defense counsel sought to impeach Plank's testimony with a letter he allegedly wrote to Glenn Wood saying that he didn't know who shot Billy Ray, the State objected to the question on grounds that the letter had not been disclosed prior to the questioning. Tr.Vol.2, 149. Although defense counsel stated that the letter had been obtained during the lunch break that day, the trial court pointed out that the letter had not been disclosed during an *in camera* hearing following lunch, and the trial court prohibited the use of the letter. Tr.Vol.2, 149-50.

As previously stated, under Oklahoma law if a party fails to comply with a discovery order, the trial court is empowered to order the appropriate relief, which may include prohibiting the defendant from calling specified witnesses, or in this instance, from using certain evidence for impeachment purposes. *Allen*, 803 P.2d at 1169. Although the OCCA agreed that the trial court's prohibition of defense counsel's cross-examination with Plank's letter was "a harsh remedy, especially considering the State's

discovery violation," the Court held that the ruling was not an abuse of discretion, considering that "[d]efense counsel had the opportunity to advise the trial judge and the [S]tate of the receipt of the letter prior to the commencement of cross-examination, but chose not to."  Response, Ex. C. at 10.

To the extent Petitioner's claim in Ground Five is based on an alleged violation of Oklahoma statutory law such claim fails because, as previously discussed, habeas corpus relief is not available for violations of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Petitioner also claims that the trial court's prohibition of impeachment with the letter violated his fundamental right to confront witnesses.  Petitioner's Brief at 27.  It is not clear from the OCCA's opinion that the state appellate court addressed the merits of this federal constitutional claim.  However, even assuming the OCCA did not reach Petitioner's constitutional claim, thus requiring an independent review of the claim, Petitioner is not entitled to habeas relief.  *See Battenfield v. Gibson*, 236 F.3d 1215, 1220 (10th Cir. 2001).[12]

The "main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."  *Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)).  "[A] defendant's right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination."  *Id.* (quoting *United States v. Begay*, 937 F.2d 515, 520 (10th Cir. 1991)).  Here, Petitioner's right to confrontation was not violated.  The record shows that

---

[12]As in Ground One, to the extent the OCCA's decision may be read as addressing the federal issue raised by Petitioner, thus requiring AEDPA deference, the result would be the same.  *Webber v. Scott*, 390 F.3d 1169, 1175 (10th Cir. 2004).

Petitioner had the opportunity to cross-examine Warren Plank on the issue of who fired the shot that killed Billy Ray. Petitioner's counsel in fact thoroughly questioned Duran, and Mr. and Mrs. Ray, as well as Plank on this issue.

Petitioner's actual claim is not that he was denied his constitutional right of confrontation, but rather that because of defense counsel's discovery violation, the trial court's ruling prevented him from using the letter to conduct an effective cross-examination – more appropriately construed as a claim that the trial court's ruling denied him due process of law. *Cf. Richmond*, 122 F.3d at 871 (recharacterizing the petitioner's confrontation clause claim as a due process claim that he was not able to present testimony necessary to his defense). In order for habeas corpus relief to be granted by federal court based on a state court evidentiary ruling, the ruling must "'render trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" *Elliott v. Williams*, 248 F.3d 1205, 1214 (10th Cir. 2001) (quoting *Vigil v. Tansy*, 917 F.2d 1277, 1280 (10th Cir. 1990).

Here, Petitioner cannot show that the excluded evidence deprived him of a fair trial. First, although defense counsel attempted to question Warren Plank concerning an alleged letter, counsel failed to make an offer of proof as to the existence or content of the purported letter. Tr.Vol.2, 149-151. Thus, the record is absent any evidence that the excluded cross-examination would have exculpated Petitioner or created a reasonable doubt concerning Petitioner's guilt, particularly given the strong evidence of his guilt presented at trial. The trial record shows that in addition to Plank's testimony, co-defendant Duran testified that after the crime, Petitioner told Duran that he knew Billy

was dead because Petitioner had shot him in the head, Tr.Vol.2, 64, and this testimony is consistent with Stella Ray's identification of Petitioner as the person who shot Billy Ray.

Under these circumstances, no fundamental unfairness resulted from the preclusion of cross-examination with the alleged letter written by Warren Plank. Therefore, the undersigned finds that Petitioner has failed to show that the trial court's exclusion of the challenged evidence necessarily prevented a fair trial. *Vigil v. Tansy*, 917 F.2d at 1280. Accordingly, the OCCA's decision rejecting this claim was not an unreasonable application of Supreme Court precedent, and Petitioner is not entitled to habeas relief on Ground Five.

## VI.  Ground Six - Exclusion of Alleged Evidence of a Third Party Perpetrator

In Ground Six Petitioner alleges that the trial court infringed upon his constitutional right to confront the witnesses against him and to present witnesses in his defense by preventing him from eliciting relevant evidence indicating that some other person committed the crime with which he was charged.  Petitioner's Brief at 28.  In a pretrial motion hearing, defense counsel sought to introduce impeachment evidence, specifically, that the Rays sold liquor from their home, arguing that this evidence was relevant to showing that other individuals were aware that the Rays had money in their home and that "someone else" robbed them.  Transcript of Pretrial Hearings, 75-76.  The trial court found that defense counsel had failed to show a nexus to another suspect and therefore the evidence was not relevant and would not be admitted at trial.  *Id.*, 76.  At trial, defense counsel began cross-examination of Detective Mike Veasey by asking

whether the detective had investigated any other suspects, and the trial court sustained the State's objection. Tr.Vol.2, 278. *Id.* Defense counsel continued by asking questions about a pager the detective found at the Rays' home on the morning after the homicide, his subsequent interview of Matthew Mallory, and whether Mallory had long hair, and the State again objected. *Id.*, 279. During a bench conference defense counsel made an offer of proof on the issue, specifically, that the pager belonged to Matthew Mark Mallory, who admitted going to the Ray home in the early morning hours just after the homicide; that Mallory had long, blond hair; that witnesses claimed a man with long, blond hair was involved in the homicide; that Mallory was interviewed and admitted being in the neighborhood; and that his girlfriend drove a red Mustang. *Id.*, 279-80. The trial court found that defense counsel's offer of proof failed to establish a sufficient nexus between Mr. Mallory and the homicide and sustained the State's objection to counsel's questions. *Id.*, 180-81.

On direct appeal, the OCCA discussed the admissibility of third party perpetrator evidence as set forth in *Dennis v. State*, 879 P.2d 1227, 1232 (Okla. Crim. App. 1994), stating;

> [E]vidence offered to show that some other person committed the crime charged must connect such other person with the fact; that is some overt act on the part of another towards the commission of the crime itself. There must be evidence of acts or circumstances that tend clearly to point to another, rather than the accused." *Woodruff v. State*, 846 P.2d 1124, 1137 (Okla. Crim. App. 1993). Further, it is not enough to show a possible motive on the part of another, the evidence must show an overt act by the third person toward the commission of a crime." *Id.*

Response, Ex. C at 11.  The OCCA held that under the guideline set out in *Dennis*, the third party inquiry could have been allowed, but the trial court's discretionary ruling that there was not a sufficient overt act toward the commission of a crime was not an abuse of discretion.  *Id.* at 12.

The OCCA's determination was reasonable.  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions.  *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973).  A defendant's interest in presenting such evidence may thus "'bow to accommodate other legitimate interests in the criminal trial process.'" *Rock*, 483 U.S. at 55 (quoting *Chambers*, 410 U.S. at 295; *accord, Michigan v. Lucas*, 500 U.S. 145, 149 (1991).  As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Rock*, 483 U.S. at 56; *accord, Lucas*, 500 U.S. at 151.

Petitioner's third party perpetrator theory is tenuous at best.  The Supreme Court has stated that the Constitution permits judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Crane*, 476 U.S. at 689-690 (quoting *Delaware v. Van Arsdall*,

475 U.S. 673, 679 (1986)).   Petitioner does not allege and the record is absent any evidence of any overt act by Mallory toward the commission of the invasion of the Rays' home and the murder of Billy Ray.   Rather, the record is replete with evidence that Petitioner forcibly entered the Rays' home and that he shot Billy Ray.   The undersigned finds that other than suspicion and innuendo, Petitioner has failed to show that he was prevented from presenting a defense or evidence that another person may have murdered Billy Ray.   Accordingly, the OCCA's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law, and Petitioner is not entitled to habeas relief on this claim.

## VII.   <u>Ground Seven - Cumulative Error</u>

Petitioner alleges that the cumulative effect of the trial errors deprived him of a fair trial.   Petitioner's Brief at 30.   It is well established that "[c]umulative-error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113-14 (10th Cir. 1998); *see also Newsted v. Gibson*, 158 F.3d 1085, 1097 (10th Cir. 1998) ("A non-error and a non-prejudicial error do not cumulatively amount to prejudicial error.").   As previously discussed, Petitioner has failed to establish any federal constitutional violations. Moreover, because Petitioner raised this claim on direct appeal, this Court reviews the OCCA's rejection of Petitioner's cumulative error claim under the deferential AEDPA standard.   *See Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003).   Given this level of deference, the undersigned finds that the OCCA's determination regarding the impact of alleged trial errors was neither contrary to or an unreasonable application of clearly

established federal law.  Accordingly, Petitioner is not entitled to habeas corpus relief on this basis.

### **RECOMMENDATION**

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 16th of January, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 29th day of December, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE